IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Faybria V. Hendrix,**

        **Plaintiff,**

v.                                                            Case No. 25-cv-2335-JWL

**Life Care Centers of America, LLC,**

        **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Faybria V. Hendrix was employed by defendant Life Care Centers of America, LLC as a certified nursing assistant for nearly ten years when defendant terminated her employment in June 2024. Plaintiff challenged the termination of her employment by filing a petition in state court against defendant and two individual defendants alleging claims of race- and age-based hostile work environment and retaliation under the Kansas Act Against Discrimination, K.S.A. § 44-1001 et seq. ("KAAD"). The state court dismissed the two individual defendants and, thereafter, defendant removed the case to federal court on the basis of diversity jurisdiction. Plaintiff then filed an amended complaint asserting claims of race- and age-based hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; and the KAAD. She also alleges a state law claim for breach of contract.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant moves to dismiss all claims in the amended complaint (doc. 10). As will be explained, the court grants in part and

denies in part defendant's motion to dismiss. The motion is granted with respect to plaintiff's hostile work environment claims on the grounds that plaintiff failed to exhaust her administrative remedies with respect to those claims. The motion is also granted with respect to plaintiff's retaliation claims, but the court will permit plaintiff an opportunity to amend her complaint to the extent she is able to assert facts plausibly suggesting that she engaged in protected activity. The motion is denied with respect to plaintiff's breach of contract claim.

**Standard**

The court will grant a motion to dismiss for failure to state a claim when a plaintiff's factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See id.* at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Background**

Consistent with the applicable standard, the court accepts as true the following well-pleaded facts alleged in plaintiff's amended complaint. *See Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1109 (10th Cir. 2019). Plaintiff Faybria Hendrix is an African-American who is over the

age of 40. She was employed by defendant from September 2014 until June 2024 as a certified nursing assistant. She alleges that she received consistently positive performance evaluations. At some point during her employment, plaintiff began to receive less favorable shift assignments as compared to her younger, Caucasian coworkers. She contends that defendant, on the basis of plaintiff's race and/or age, routinely assigned plaintiff to unfavorable shifts. In March 2023, plaintiff requested a modification of her work schedule to include primarily day shifts—a request that she alleges was justified by her seniority, experiences, job performance, and defendant's policies and practices. Plaintiff alleges that her request was summarily denied by a Caucasian supervisor without justification in favor of younger, Caucasian employees. Plaintiff alleges that she observed that younger, Caucasian employees received preferred shift assignments.

In June 2024, defendant removed plaintiff from the work schedule after plaintiff failed to make herself available for a drug test. Plaintiff alleges that she was unavailable because she was working another job at the time. According to plaintiff, defendant advised her that she had been removed from the schedule due to plaintiff's non-compliance with its drug testing policy. Plaintiff alleges that the policy was enforced in a discriminatory and selective manner. She alleges that she was constructively terminated on June 11, 2024, when she was removed from the work schedule. On July 24, 2024, defendant notified plaintiff that her employment was terminated.

**Hostile Work Environment Claims**

Defendant moves to dismiss plaintiff's hostile work environment claims on the grounds that plaintiff's charge of discrimination failed to include those claims in any respect and, accordingly, plaintiff has not exhausted her administrative remedies with respect to those claims.

In her Charge of Discrimination, EEOC Form 5, plaintiff asserted that she was subjected to "discrimination based on retaliation" from June 1, 2024 through June 11, 2024. She described the "particulars" of her charge as follows:

> I began working at the above-named employer on or around September 9, 2014, as a Certified Nursing Assistant.
>
> On or around January 1, 2024, I began complaining about scheduling issues, being given less hours, and disrespectful treatment from my supervisor. After my complaints, nothing was done to correct the issues that I had brought up, so I contacted the corporate office for assistance. After I had contacted the corporate office, the same behavior continued by management. On or around March 1, 2024, I was sent home from work for having my head in my hands at the front counter. On or around June 11, 2024, I was called outside of my duty hours and told to take a drug test. I was unable to complete the drug test that day, due to being on duty at my second job. I was told not to return to work until I had been contacted by the corporate office. On or around July 24, 2024, I received mail from the employer, indicating I had been terminated.
>
> I believe I was disciplined and discharged in retaliation for making a complaint to the corporate office.

Defendant contends that plaintiff has failed to exhaust her race- and age-based hostile work environment claims because plaintiff, in her charge, wholly fails to refer to her race or age and fails to allege any facts from which a reasonable reader could infer that she intended to assert claims based on her race or age. The court agrees.

The exhaustion rule serves two key purposes—to "give notice of the alleged violation to the charged party; and . . . to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quotations omitted); *see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (noting similar ADEA exhaustion requirement), *overruled in part by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

4

"To advance these purposes, after a plaintiff receives a notice of her right to sue from the EEOC, that plaintiff's claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Smith*, 904 F.3d at 1164 (quotation omitted). The ultimate question is whether "the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Id*. at 1164-65. While the court liberally construes the allegations in an EEOC charge, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id*. at 1166.

Liberally construing plaintiff's EEOC charge, there are no facts from which an EEOC investigator could surmise that plaintiff was asserting a hostile work environment claim based on race or age. Even plaintiff's retaliation claim as described in the Charge does not indicate that she made complaints of race discrimination or age discrimination. She alleges that she complained about scheduling issues and being scheduled for less hours, but she does not allege that these scheduling concerns had anything to do with her race or age. She does not allege that she was selected for drug testing based on her race or age. Plaintiff argues in response to defendant's motion to dismiss that she "clarified" in her amended complaint that scheduling and discipline decisions were based on race and age. But the court's inquiry with respect to exhaustion is "limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative *charge*." *Jones v. U.P.S., Inc*., 502 F.3d 1176, 1186 (10th Cir. 2007) (emphasis added); *Lincoln*, 900 F.3d at 1181 (plaintiff may not bring claims in lawsuit that were not part of EEOC charge). Plaintiff also argues that any EEOC investigation into plaintiff's retaliation claim would necessarily include inquiry into whether the

scheduling issues that plaintiff was complaining about "were the product of unlawful race or age discrimination." But in fact, it appears that the EEOC dismissed plaintiff's charge within days of its filing without conducting any investigation whatsoever because "the facts alleged in the charge fail to state a claim under any of the laws enforced by the EEOC." The court, then, grants defendant's motion to dismiss plaintiff's race- and age-based hostile work environment claims based on plaintiff's failure to exhaust her administrative remedies with respect to those claims.

**Retaliation**

Defendant moves to dismiss plaintiff's federal retaliation claims under Title VII and the ADEA because plaintiff failed to file those claims within 90 days of receiving her Notice of Right to Sue. *See* 42 U.S.C. §§ 2000(e)-5(f)(1) (setting 90-day deadline to file suit after right-to-sue letter). Plaintiff's initial petition in state court was filed within the 90-day deadline, but that petition asserted only state law claims under the KAAD. By the time plaintiff filed an amended complaint asserting retaliation claims under Title VII and the ADEA, more than 300 days had passed since the EEOC issued the Notice of Right to Sue. In response, plaintiff contends that her amended complaint asserting federal claims arises out of the same conduct described in her original petition such that her amended complaint relates back to the original petition under Federal Rule of Civil Procedure 15(c).

Federal Rule of Civil Procedure 15(c)(1) governs when an amended pleading "relates back" to an original pleading. Where an amended pleading asserts a new claim, that claim must "ar[i]se out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). It is clear that the KAAD retaliation claim set

6

forth in the original petition is the mirror image of the federal retaliation claims set forth in the amended complaint. In the absence of any persuasive argument from defendant that the amended complaint should not relate back to the original petition under Rule 15(c)(1)(B), the court concludes that plaintiff's federal retaliation claims are timely because the amended complaint relates back to the date of the state court petition for purposes of applying the statute of limitations. *See Thompson v. IP Network Solutions, Inc.*, 2014 WL 5761127, at *3-4 (E.D. Mo. 2014) (federal claims under Title VII, the ADA, and the ADEA related back to the filing of state court petition asserted claims under Missouri Human Rights Act) (citing *Donnelly v. Yellow Freight System, Inc.*, 874 F.2d 402 (7th Cir. 1989) (holding that plaintiff's amended complaint asserting federal claims "clearly relates back to the date of the original complaint," which alleged only a claim under the Illinois Human Rights Act)).

Defendant also moves to dismiss plaintiff's retaliation claims on the grounds that plaintiff has wholly failed to plead that she engaged in protected activity as required by Title VII, the ADEA and the KAAD. A prima facie claim of retaliation requires a plaintiff to show "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021); *see also MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1278-79 (10th Cir. 2005) (listing similar elements of an ADEA retaliation claim). Protected activity for purposes of a retaliation claim includes opposition to discrimination made illegal under Title VII. *Iweha v. State of Kan.*, 121 F.4th 1208, 1233 (10th Cir. 2024); *MacKenzie*, 414 F.3d at

1278 ("Such [protected activity under the ADEA] includes opposing or complaining about age discrimination by the employer.").

The court agrees with defendant that plaintiff has failed to state a claim for retaliation under Title VII, the ADEA or the KAAD. The amended complaint is devoid of any allegations that plaintiff engaged in protected activity. While plaintiff alleges that she requested a schedule modification, she does not allege that she reported any concerns that defendant's scheduling decisions or practices were based on race or age. Simply complaining about scheduling issues does not constitute protected activity. *See Iweha*, 121 F. 4th at 1234 ("General complaints about company management . . . will not suffice.") (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)). In her response to the motion to dismiss, plaintiff contends that she in fact opposed the "discriminatory application" of defendant's scheduling practices and she suggests that she pleaded that fact in paragraphs 6 and 7 of the amended complaint. But even the most cursory reading of those paragraphs reveals that plaintiff has not alleged that she complained about discrimination. In paragraph 6, plaintiff describes defendant's shift assignments as discriminatory, without any reference to her complaints to defendant about those assignments. In paragraph 7, plaintiff describes her "formal request" for a schedule modification without any suggestion that her request included information from which defendant might infer that plaintiff believed that shift assignments were based on race or sex. She states only that she requested to move to the day shift and her request was denied. While plaintiff alleges that the denial was based on discriminatory reasons, she does not allege that she ever notified anyone that she believed that defendant's scheduling decisions were discriminatory.

In short, there are no facts suggesting that plaintiff requested a scheduling modification in the context of complaining about race or age discrimination. There are no facts that plaintiff ever complained about or reported any such discrimination at all. Without protected opposition to discrimination, there can be no retaliation. *See id*. (stating that the "absence of a reference to unlawful discrimination" precludes a retaliation claim because the employer "cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII"). Plaintiff's retaliation claims, then, are dismissed for failure to state a claim. Nonetheless, the court will provide plaintiff with an opportunity to amend her complaint to the extent she is able to assert facts plausibly suggesting that she engaged in protected activity.[1]

**Breach of Contract**

Lastly, defendant moves to dismiss plaintiff's state law claim for breach of contract. In her amended complaint, plaintiff alleges that her employment with defendant was "subject to the policies and practices" that were in effect during her employment, including a right to "notice" of the termination of her employment. She alleges that defendant breached the terms of her employment contract by failing to notify her of the termination of her employment and by failing

---

[1] Defendant suggests that the dismissal of plaintiff's retaliation claims should be with prejudice without an opportunity to amend because plaintiff could have avoided that result by filing an amended complaint in response to the motion to dismiss. In the context of this case, the court believes that an opportunity to amend is the better approach. Specifically, plaintiff describes in her amended complaint only a single March 2023 complaint to management about a schedule modification. But in her Charge of Discrimination, plaintiff suggests that she made additional complaints on or around January 2024 to both her supervisor and to defendant's corporate office. It is clear, then, that plaintiff and her counsel need to confer to the extent plaintiff may have engaged in protected activity in connection with one or more of these additional complaints.

to provide her with the reasons for the termination of her employment. She alleges that, as a result of defendant's breach, she was "left in a state of uncertainty about whether to seek other employment, unemployment benefits or take other action." She claims that she sustained damages including emotional distress, loss of job opportunities and an inability to inform potential employers of the specific reason for her termination.[2] According to defendant, this claim must be dismissed because plaintiff has not established the existence of a contract for employment and has not alleged the existence of any policy that limits defendant's ability to terminate an employee.

Under Kansas law, the "fundamental rule of employment contract formation is simple. Employment is offered and then employment is accepted. And a contract is born." *Henretty v. Healthcenter Nw., LLC*, 559 P.3d 1229, 1234 (Kan. Ct. App. 2024). Defendant does not dispute that employment was offered and accepted in this case. The thrust of defendant's motion is that the terms of that contractual relationship did not limit defendant in the way that plaintiff alleges—by requiring notice of termination and the reasons for that termination. Contrary to defendant's argument, plaintiff has alleged that such terms existed in defendant's "policies and practices" that were in effect during her employment. Nothing more is required at this stage. The motion is denied.

---

[2] Because defendant does not challenge plaintiff's claim for damages in its motion to dismiss, the court simply notes that contract damages are limited "to those damages which may fairly be considered as arising, in the usual course of things, from the breach itself, or may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." *See Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 27 (1977).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss for failure to state a claim (doc. 10) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff may file an amended complaint as described herein on or before **Friday, October 17, 2025**.

**IT IS SO ORDERED.**

Dated this 24th day of September, 2025, at Kansas City, Kansas.

s/John W. Lungstrum
John W. Lungstrum
United States District Judge